**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ONE STOCKDUQ HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12-cv-03037-JPM-tmp |
| | ) | |
| BECTON, DICKINSON AND COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE
ORDER LIFTING COURT'S STAY ISSUED FEBRUARY 13, 2013**

Before the Court is Defendant's Motion to Transfer Action
Pursuant to 28 U.S.C. § 1404(a) filed January 23, 2013. (ECF
No. 14.) Plaintiff responded in opposition on February 11, 2013.
(ECF No. 24.) Defendant filed a Reply on February 21, 2013.
(ECF No. 30.)

For the following reasons, Defendant's Motion is DENIED.

### I. BACKGROUND

This case concerns the alleged infringement by Defendant
Becton, Dickinson and Company ("Defendant" or "Becton Dickinson")
of Plaintiff One StockDuq Holdings, LLC's ("Plaintiff" or "One
StockDuq") Patent. (See ECF No. 1.) Plaintiff alleges that two
Becton Dickinson products, the Nexiva catheter and the Insyte
AutoGuard catheter (the "Accused Products"), infringe United
States Patent No. 5,704,914 (the "'914 Patent") — a novel IV

catheter placement assembly — owned by Plaintiff. (ECF No. 14-1 at 1; ECF No. 24 at 2.)

Plaintiff filed its Complaint in this Court on December 3, 2012. (ECF No. 1.) Defendant filed its Answer (ECF No. 13) and Motion to Change Venue (ECF No. 14) on January 23, 2013. On January 30, 2013, Defendant filed a Motion to Stay Discovery and Automatic Deadlines pending the resolution of its Motion to Change Venue. (ECF No. 16.) The Court granted Defendant's Motion to Stay on February 13, 2013. (ECF No. 25.)

Becton Dickinson is incorporated and has its principal place of business in New Jersey and maintains a large operation in Sandy, Utah (the "Utah Facility").[1] (See ECF No. 14-1 at 2.) The Accused Products were "conceived, designed, and developed almost entirely by engineers in Sandy, Utah." (O'Bryan Decl., ECF No. 14-2, ¶ 7; ECF No. 14-1 at 2.) Additionally, all Insyte AutoGuard catheters and the majority of Nexiva catheters are manufactured in the Utah Facility. (ECF No. 14-1 at 2.) Approximately 150 Becton Dickinson employees who have performed substantial work on the Accused Products are located at the Utah Facility. (Id.) In support of its Motion to Transfer Venue, Becton Dickinson identifies seventeen individuals who are currently employed at the Utah Facility, or who were formerly employed at the Utah Facility and still reside in Utah, and have

---

[1] Becton Dickinson is a global company that has locations across the United States. (See ECF No. 24-8.)

significant knowledge of the "conception, design, development, manufacturing, regulatory, quality assurance, medical affairs, and/or marketing aspects" of the Accused Products. (O'Bryan Decl., ECF No. 14-2, ¶¶ 12, 14; ECF No. 14-1 at 2.)

Becton Dickinson has no research and development, manufacturing, distribution, or corporate facilities in Tennessee; does not maintain documents or physical evidence relating to the Accused Products in Tennessee; and, to the best of Defendant's knowledge, no current or former Becton Dickinson employees with relevant knowledge reside within Tennessee. (ECF No. 14-1 at 2-3.) Becton Dickinson maintains a one-employee sales office in Brentwood, Tennessee. (Id. at 2.) Becton Dickinson sells the Accused Products to customers in Tennessee and across the United States. (Id. at 3; ECF No. 24 at 2 ("[T]he infringing catheters have been offered for sale and sold [in the Western District of Tennessee] . . . .").)

Dr. John E. Stocking ("Dr. Stocking") and Dr. Francis Duque ("Dr. Duque") are practicing anesthesiologists and are named as inventors in the '914 Patent. (See ECF No. 24 at 2.) Dr. Stocking and Dr. Duque reside, and developed the invention that became the '914 Patent, in Louisville, Kentucky. (Id. at 3.) One StockDuq is incorporated in Kentucky and has its principal place of business in Louisville, Kentucky. (See ECF No. 14-1 at 3.)

Plaintiff asserts that a number of former and current University of Louisville anesthesiologists, residents, and medical-school alumni who reside in or around Louisville, Kentucky, have "knowledge regarding the conception, development and testing of the ['914 Patent]." (ECF No. 24 at 3.)

Plaintiff asserts that on three occasions Dr. Stocking disclosed the '914 Patent to Becton Dickinson: in written correspondence with Clateo Castellini at the New Jersey headquarters of Becton Dickinson; in written correspondence with Joyce D. Critcher at the Office of New Product Suggestions for Becton Dickinson in North Carolina; and in written correspondence with Michael Simpson at Infusion Therapy Systems for Becton Dickinson.[2] (Id. at 3-4; ECF No. 24-2 to -6.)

## II. LEGAL STANDARD

Defendant moves the Court to transfer this action to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1404(a) ("§ 1404(a)"). (See ECF No. 14-1 at 1.) A district court may, "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts have "broad discretion" in determining whether to transfer a case pursuant to 28 U.S.C. § 1404. Reese v. CNH Am. LLC, 574 F.3d 315, 320 (6th

---

[2] Plaintiff states, upon information and belief, that Mr. Simpson is not currently located in Utah. (ECF No. 24 at 4 n.1.)

Cir. 2009); see Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955)
(stating that the "discretion to be exercised [by courts] is
broader" under § 1404(a) than under the doctrine of forum non
conveniens). Analysis under § 1404(a) is intended to be flexible
and individualized. See Stewart Org., Inc. v. Ricoh Corp., 487
U.S. 22, 29-30 (1988).

In determining whether to transfer a case under § 1404(a), a
court must first find that the civil action could have been
brought in the requested transferee district. 28 U.S.C.
§ 1404(a); see Reese, 574 F.3d at 320.

Once the court has determined that the case could have been
brought in the requested transferee district, the court must
determine whether party and witness "convenience" and "the
interest of justice" favor transfer to that district. See Reese,
574 F.3d at 320; Esperson v. Trugreen Ltd., No. 2:10-cv-02130-
STA-cgc, 2010 WL 4362794, at *5 (W.D. Tenn. Oct. 5, 2010)
(adopted by the district court in Esperson v. Trugreen Ltd., No.
2:10-cv-02130-STA-cgc, 2010 WL 4337823 (W.D. Tenn. Oct. 27,
2010)). In weighing these statutory factors, courts may consider
the public and private factors set forth in Gulf Oil v. Gilbert,
330 U.S. 501, 508-09 (1947), but courts are not burdened with
"preconceived limitations derived from the forum non conveniens
doctrine." See Norwood, 349 U.S. at 31 (citation omitted)
(internal quotation marks omitted); Moore v. Rohm & Haas Co., 446

5

F.3d 643, 647 n.1 (6th Cir. 2006) (stating that in determining whether to transfer a case under § 1404(a), a district court "should consider the private interests of the parties . . . as well as other public-interest concerns"); Esperson, 2010 WL 4362794, at *5. Additionally, the "interest of justice" factor has been interpreted broadly by courts, covering the individualized circumstances of each case. See Cincinnati Ins. Co. v. O'Leary Paint Co., 676 F. Supp. 2d 623, 633 (W.D. Mich. 2009).

While there is a strong presumption in favor of the plaintiff's choice of forum under the doctrine of forum non conveniens, under § 1404(a) a plaintiff's choice of forum may be considered, but is entitled to less deference. See Norwood, 349 U.S. at 32; Lemon v. Druffel, 253 F.2d 680, 685 (6th Cir. 1958) ("The choice of the forum by the petitioner is no longer as dominant a factor as it was prior to the ruling in Norwood v. Kirkpatrick[.]"); Esperson, 2010 WL 4362794, at *5-6. As a result, Defendant's burden is to demonstrate, by a preponderance of the evidence, that a change of venue to the transferee district is warranted under § 1404(a). See Eaton v. Meathe, No. 1:11-cv-178, 2011 WL 1898238, at *2 (W.D. Mich. May 18, 2011); Amphion, Inc. v. Buckeye Elec. Co., 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003); Roberts Metals, Inc. v. Fla. Props. Mktg. Grp., Inc., 138 F.R.D. 89, 93 (N.D. Ohio 1991), aff'd per curiam,

22 F.3d 1104 (6th Cir. 1994). "Merely shifting the inconvenience from one party to another does not meet Defendant's burden." McFadgon v. Fresh Mkt., Inc., No. 05-2151-D/V, 2005 WL 3879037, at *2 (W.D. Tenn. Oct. 21, 2005). If the court determines that the "balance between the plaintiff's choice of forum and defendant's desired forum is even, the plaintiff's choice of law should prevail." Stewart v. Am. Eagle Airlines, Inc., No. 3:10-00494, 2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010).

### III. ANALYSIS

Defendant asserts that Plaintiff had the right to bring this action in the District of Utah. (See ECF No. 14-1 at 4-5.) Plaintiff does not dispute this assertion. (See ECF No. 24 at 8.) The Court agrees with the parties that personal jurisdiction over the Defendant exists in the District of Utah, and that Plaintiff had the right to bring this action in the District of Utah. Thus, the only issue remaining is whether the balance of the statutory factors — the convenience to the witnesses, the convenience to the parties, and the interest of justice — favors transfer to the District of Utah. The Court will address each statutory factor separately before balancing these factors to determine whether transfer to the District of Utah pursuant to § 1404(a) is proper.

## A. Statutory Factors Under § 1404(a)

### 1. Convenience to Witnesses

Defendant argues that litigating this action in the District
of Utah would be much more convenient for the majority of the key
witnesses in this action.  (See ECF No. 14-1 at 6.)  In support
of this assertion, Defendant states that the Accused Products
were designed, developed, marketed, and primarily manufactured at
the Utah Facility; that there are no potential witnesses with
knowledge relevant to this action residing within the Western
District of Tennessee; and that requiring witnesses to travel to
the Western District of Tennessee would "cause unnecessary
travel, logistical challenges, and costs." (Id.)  Defendant
further identifies seventeen witnesses who it asserts have
"substantial knowledge relating to the accused products" (ECF No.
14-2 ¶¶ 12, 14).  See supra pp. 2-3.

Plaintiff argues that, although potential witnesses for
Defendant are located within the District of Utah, Defendant has
not carried its burden in showing that its potential witnesses
would be unwilling or unable to testify in the Western District
of Tennessee; Defendant has not sufficiently supported its
assertion that it would be inconvenient to Becton Dickinson
employees to travel to the Western District of Tennessee; and
Defendant has not demonstrated that all of the seventeen named

witnesses will be called to give non-cumulative testimony. (See
ECF No. 24 at 11-12.)

Additionally, Plaintiff asserts that the Western District of
Tennessee is a more convenient location than the District of Utah
for the following witnesses who are likely to be called by
Plaintiff:  sales employees at the Becton Dickinson sales office
located in Brentwood, Tennessee; an expert witness from one of
the Memphis hospitals in which the Alleged Products were used;
and witnesses from Louisville, Kentucky, where the invention was
developed and tested including, but not limited to, Dr. Stocking
and Dr. Duque, who are full-time surgeons. (Id. at 13-14.)

In order to support a finding that this factor favors
transfer, the party asserting that the forum is inconvenient for
witnesses should "proffer, by affidavit or otherwise, sufficient
details respecting the witnesses and their potential testimony to
enable the court to assess the materiality of evidence and the
degree of inconvenience." Eaton, 2011 WL 1898238, at *3 (quoting
Rinks v. Hocking, 1:10-CV-1102, 2011 WL 691242, at *3 (W.D. Mich.
Feb. 16, 2011)) (internal quotation marks omitted).
"Particularized information" must be raised to enable a court to
determine "how much weight to give a claim of inconvenience."
Id. (quoting Rinks, 2011 WL 691242, at *3) (internal quotation
marks omitted).  Additionally, it is the "materiality and
importance of the testimony of prospective witnesses, and not

merely the number of witnesses," that is crucial to this inquiry.
Rinks, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011).

Defendant has not made a sufficient showing that the
potential witnesses it identified will be particularly
inconvenienced by keeping the case in the Western District of
Tennessee, or that the potential witnesses' testimony will be
material and non-cumulative. In its Motion to Change Venue,
Defendant merely states that the employees and former employees
most knowledgeable about the Accused Products are located in the
District of Utah, and that requiring them to travel to the
Western District of Tennessee will "cause unnecessary travel,
logistical challenges, and costs." (See ECF No. 14-1 at 1.)
Additionally, in the attached Declaration of Jeff O'Bryan (ECF
No. 14-2), Defendant simply lists the potential witnesses, their
job titles, and areas of knowledge. (Id. ¶¶ 12, 14.) These bare
assertions do not provide the Court with the particularized
information necessary to determine what weight to afford
Defendant's claim of witness inconvenience. Additionally, these
assertions demonstrate neither the materiality of the witnesses'
testimony nor the specific inconvenience that the witnesses will
face.

Further, although it is likely that many relevant witnesses
to this action are located within the District of Utah, Plaintiff
has shown that there will be other relevant witnesses more

closely located to the Western District of Tennessee.  The
majority of Plaintiff's witnesses who can testify as to the
design and development of the '914 patent are located in
Louisville, Kentucky.  (See ECF No. 24 at 14.)  Plaintiff has
submitted Declarations from Dr. Stock and Dr. Duque describing
the reasons that the District of Utah would be a less convenient
forum for them.  (ECF No. 24-1.)  While the District of Utah will
undoubtedly be a more convenient forum for Defendant's potential
witnesses, Defendant has not shown that the District of Utah will
be a more convenient forum for the majority of the likely
witnesses in this case.  Louisville, Kentucky, is located
approximately 1578 miles from Salt Lake City, Utah, nearly 1200
miles more than the distance between Louisville, Kentucky, and
Memphis, Tennessee.  Merely shifting inconvenience from one party
to another does not meet a defendant's burden.  See McFadgon,
2005 WL 3879037, at *2.  The Court finds that Defendant has not
demonstrated by a preponderance of the evidence that this factor
favors transfer to the District of Utah.

### 2. Convenience to the Parties

Defendant argues that the District of Utah is a more
convenient venue for the parties than the Western District of
Tennessee.  (See ECF No. 14-1 at 7.)  Defendant asserts that the
following interests favor transfer:  access to relevant
witnesses; location of the sources of proof; and location of the

allegedly infringing activity.  These interests are considered in turn.

### a. Access to Relevant Witnesses

Defendant asserts that the vast majority of Defendant's relevant non-party witnesses are located in the District of Utah and that, to its knowledge, none of Plaintiff's potential witnesses with knowledge relevant to this action are located in the Western District of Tennessee.  (See ECF No. 14-1 at 6; ECF No. 30 at 2-3.)  Additionally, Defendant asserts that because several potential non-party witnesses are located within the District of Utah, transferring the case to the District of Utah would place these witnesses within the subpoena power of the district court.  (See ECF No. 14-1 at 8.)  Defendant states that it is not aware of any potential non-party witnesses located within the subpoena power of the Western District of Tennessee. (Id. at 9.)

Plaintiff argues that even if it was true that more of Defendant's likely witnesses and evidence were located at the Utah Facility, transferring the action to the District of Utah would only shift the inconvenience to Plaintiff.  (See ECF No. 24 at 8-9.)  While the District of Utah is closer to one of Becton Dickinson's many United States facilities, Plaintiff argues that Defendant, as a global company, will be better able to bear the costs of inconvenience than Plaintiff who has only one location

which is located closer to the Western District of Tennessee and easier to access either by car or a direct flight.[3] (Id. at 9.)

Additionally, Plaintiff asserts that at this point "the unavailability of witnesses is entirely speculati[ve]" and that Defendant has not identified any witnesses that are likely to refuse to cooperate. (ECF No. 24 at 13.) Plaintiff further asserts that the majority of Defendant's proffered witnesses are employees of Becton Dickinson, making it more likely that they will be cooperative. (Id. at 12.) Additionally, if a witness is unavailable or uncooperative, the witness can be deposed in a jurisdiction having subpoena power over the witness. (Id. at 13.)

Although the District of Utah is generally a more convenient forum for access to Defendant's potential witnesses, it appears to the Court to be a less convenient forum for Plaintiff. Merely shifting inconvenience from one party to another does not meet a defendant's burden. See McFadgon, 2005 WL 3879037, at *2. Furthermore, Defendant's speculation that a potential witness may be unavailable or uncooperative is not enough to demonstrate the need for the subpoena power of a court. The Court finds that Defendant has not demonstrated by a preponderance of the evidence that this interest favors transfer to the District of Utah.

_____

[3] Plaintiff submits to the Court that there is no direct flight from Louisville, Kentucky, to Salt Lake City, Utah, but there is a direct flight from Louisville, Kentucky, to Memphis, Tennessee. (See ECF No. 24 at 10.)

### b. Location of the Sources of Proof

Defendant argues that the sources of proof in this case are primarily found in the District of Utah. (<u>See</u> ECF No. 14-1 at 6-7.) In support of this assertion, Defendant states that the "vast majority" of key documents relating to the conception, design, manufacturing, and marketing of the Accused Products, along with physical samples of the Accused Products, are located in the District of Utah, and that, to the best of its knowledge, Becton Dickinson does not maintain any relevant documents or evidence in the Western District of Tennessee. (<u>Id.</u>) Defendant cites <u>In re Genetech, Inc.</u>, 566 F.3d 1338, 1345 (Fed. Cir. 2009), stating that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." (<u>See</u> ECF No. 30 at 2.)

Plaintiff asserts that the physical location of the evidence is immaterial because technology has made it possible to easily transport the relevant documents and evidence. (ECF No. 24 at 14.) Additionally, the location of the majority of its documents related to the "conception, design, development, manufacturing, testing, regulatory affairs, quality assurance, . . . marketing[,]" and litigation regarding the '914 Patent are located in Louisville, Kentucky. (<u>Id.</u> at 15.) Further, Plaintiff's counsel in Nashville, Tennessee, has copies of the relevant documents. (<u>Id.</u>)

Defendant has demonstrated that its sources of proof are located in the District of Utah. While Plaintiff has demonstrated that its sources of proof are located in closer proximity to the Western District of Tennessee than the District of Utah, Plaintiff has not demonstrated that any of its proof resides in this district; and, given the state of technology in relaying documents and other sources of proof, that Plaintiff would have difficulty in transporting relevant documents to the District of Utah.[4] Given that Defendant's sources of proof are more likely to be material in this case, see In re Genetech, 566 F.3d at 1345, the Court finds that Defendant has demonstrated by a preponderance of the evidence that this factor favors transfer to the District of Utah.

### c. Location of the Allegedly Infringing Activity

Defendant asserts that, because the Accused Products were designed, developed, marketed, and primarily manufactured at the Utah Facility, a substantial portion of the "operative facts on which this litigation is based occurred" in the District of Utah. (See ECF No. 14-1 at 7.) Defendant supports its assertion by citing Tuna Processors, Inc. v. Hawaii International Seafood, Inc., 408 F. Supp. 2d 358, 361 (E.D. Mich. 2005), which states

---

[4] While the fact that technology has altered the burden of transporting information is undeniable, this factor should still be considered in deciding whether to transfer a case under § 1404(a). See In re Link_A_Media Devices Corp., 662 F.3d 1221, 1224 (Fed. Cir. 2011) ("While advances in technology may alter the weight given to these factors, it is improper to ignore them entirely.")

that the "preferred forum" is the one in which the alleged infringing actions occurred. (Id. at 7.)

Plaintiff asserts that a substantial portion of the operative facts occurred near the Western District of Tennessee, in Louisville, Kentucky, and not in the District of Utah as asserted by Defendant. (ECF No. 24 at 16.) Additionally, Plaintiff states that infringing activity has also taken place in the Western District of Tennessee, as the Accused Products have been sold and used in this district. (Id.)

The design, development, marketing, and the majority of the manufacturing of the Accused Products have taken place in the District of Utah. While Plaintiff is correct that the District of Utah is not the only place in which the operative facts occurred, the connection between all of the operative facts and the District of Utah is stronger than the connection between the operative facts and the Western District Tennessee. The Court finds that Defendant has demonstrated by a preponderance of the evidence that this interest favors transfer to the District of Utah.

In summary, while the convenience-to-the-parties factor is close, the Court finds that the Defendant has demonstrated by a preponderance of the evidence that the District of Utah would be, on a whole, more convenient for the parties.

### 3. Interest of Justice

Defendant argues that this case should be transferred to the District of Utah based on additional considerations that fall under the interest-of-justice factor. (See ECF No. 14-1 at 4, 8-10.) The parties raise the following interests: localized interest in the litigation; trial efficiency; and familiarity with the relevant law. These interests are considered in turn.

### a. Localized Interest

Defendant argues that the localized interest in the District of Utah is greater than the localized interest of the Western District of Tennessee because there is a stronger connection between the Accused Products, accused party, and allegedly infringing activities and the District of Utah. (See ECF No. 14-1 at 9.) Defendant asserts that while citizens in the Western District of Tennessee have "an interest in whether infringing [products] are sold in their district, this interest is no greater than that of citizens in any other judicial district where the . . . products are sold." (Id.)

Plaintiff states that the citizens of the Western District of Tennessee have an interest in whether infringing medical devices are sold in their district. (See ECF No. 24 at 2.)

While there is a connection between the Western District of Tennessee and the allegedly infringing activities, the connection between the infringement and the District of Utah is arguably

17

stronger.  Given the three purposes of the patent system — "(1) to foster and reward invention, (2) to stimulate further innovation, and (3) to ensure free use of ideas in the public domain" — this consideration is given less weight because no state has a greater interest than any other state in promoting the goals of the patent system, a matter of national, and not local, concern.  See Caterpillar, Inc. v. ESCO Corp., No. 12-cv-1017, 2012 WL 6618602, at *7 (C.D. Ill. Dec. 18, 2012) (quoting Univ. of Colo. Found., Inc. v. Am. Cyanamid Co., 342 F.3d 1298, 1306 (Fed. Cir. 2003)).  The Court finds that Defendant has not demonstrated by a preponderance of the evidence that this interest favors transfer to the District of Utah.

### b. Trial Efficiency

Plaintiff asserts that the relative dockets of the District of Utah and the Western District of Tennessee weigh against transfer. (See ECF No. 24 at 17.)  In support of this assertion, Plaintiff cites the Judicial Caseload Profiles of the District of Utah and the Western District of Tennessee. (See id.; ECF No. 24-9.)  The median time for a civil case to proceed from filing to trial in the twelve-month period ending September 30, 2012, was 18.8 months in the Western District of Tennessee and 41.9 months in the District of Utah. (See ECF No. 24-9.)

Defendant asserts that while the median time from filing to trial for civil cases may be longer in the District of Utah, the

median time from filing to trial for patent cases in the two

districts over the last ten years is roughly the same.  (ECF No.

30-2; see ECF No. 30 at 4; ECF No. 30-1 ¶ 2.)

Plaintiff has furnished statistics showing that, in the year

ending on September 30, 2012, civil cases filed in the Western

District of Tennessee have been more expeditiously adjudicated

than those filed in the District of Utah.  Defendant has only

shown that, in the last ten years, the District of Utah and the

Western District of Tennessee have had similar median times from

filing to trial in patent cases.  Plaintiff's statistics are more

persuasive to the Court given the lack of detail in Defendant's

statistics about the current state of the patent docket of either

court.  The Court finds that Defendant has not met its burden in

demonstrating by a preponderance of the evidence that this

interest favors transfer to the District of Utah.

### c. Familiarity with the Relevant Law

Plaintiff asserts that this Court is a better forum than the

District of Utah because this Court, a participating court in the

Patent Pilot Program, has an enhanced expertise in handling

patent cases.  (See ECF No. 24 at 18; see also ECF No. 24-10.)

Plaintiff states that this is particularly important given the

"complex and dynamic technological facts . . . rarely encountered

in most other areas of litigation."  (ECF No. 24 at 18 (quoting

Patent Case Management Judicial Guide).)  Additionally, Plaintiff

notes that the Western District of Tennessee has adopted its own
set of Local Patent Rules, bringing a predictability and
efficiency to the proceedings that would not be true in the
District of Utah, a court that has not instituted local patent
rules.  (Id. at 18.)

Defendant asserts that because "all federal courts are
equally equipped to handle patent cases," the fact that the
Western District of Tennessee is part of the Patent Pilot Program
should not weigh in favor of keeping the action in this district.
(ECF No. 30 at 5 (citing In re Link_A_Media, 662 F.3d at 1224).)

Although this is not a traditional interest considered by
courts in determining whether transfer to a different venue is
warranted, the Court considers this as a matter that may be
considered under the interest-of-justice factor.  28 U.S.C.
§ 1404(a); see Cincinnati Ins. Co., 676 F. Supp. 2d at 633; see
also Caterpillar, 2012 WL 6618602, at *7; Tech Licensing Corp. v.
Harris Corp., No. 9 C 820, 2012 WL 1298611, at *3 (N.D. Ill. Apr.
16, 2012); Compression Tech. Solutions LLC v. EMC Corp., No.
4:11CV1579 TCM, 2012 WL 1188576, *9 (E.D. Mo. Apr. 6, 2012).[5]

While this Court has no reason to believe that there is any
material difference in the expertise or manner of handling patent
cases in the Western District of Tennessee and the District of

_____

[5] The Court notes that there is some evidence suggesting that district courts
with more patent cases are affirmed at a greater rate by the Federal Circuit
than district courts in general.  See Adam Shartzer, Patent Litigation 101:
Empirical Support for the Patent Pilot Program's Solution to Increase Judicial
Experience in Patent Law, 18 Fed. Cir. B.J. 191, 232-33, 239 (2009).

Utah, Plaintiff's selection of this Court is a rational one. This Court uses Local Patent Rules for the management of patent cases and is the only Patent Pilot Program[6] court located in the same circuit as Plaintiff. A Plaintiff's rational choice of forum should be entitled to some deference in considering whether to transfer the action to a different district. See supra p. 6.

The Court finds that Defendant has not met its burden in demonstrating by a preponderance of the evidence that this interest favors transfer to the District of Utah.

In summary, while the interest-of-justice factor is close, the Court finds that the Defendant has not demonstrated by a preponderance of the evidence that transfer to the District of Utah would be in the interest of justice.

## B. Balance of the Statutory Factors

While it would be undeniably more convenient for Defendant to litigate this case in the District of Utah, balancing the statutory factors in this case, the Court finds that the Defendant has failed to demonstrate by a preponderance of the evidence that the factors weigh in favor of transfer to the District of Utah. In this case the convenience to the witnesses and the interests of justice weigh against transfer to the District of Utah. The fact that transfer would, on balance, be

---

[6] Congress developed the Patent Pilot Program to "encourage enhancement of expertise in patent cases among district judges." Pilot Program in Certain District Courts Act of 2010, Pub. L. No. 111-349 § 1, 124 Stat. 3674 (2011); see H.R. 628, 111th Cong. (1st Sess. 2009).

more convenient for the parties does not outweigh the other two factors in this case. Transferring this case to the District of Utah would result in the shifting of inconvenience from Defendant to Plaintiff. Additionally, Plaintiff's choice of forum is entitled to some deference. Here, Plaintiff has made a rational choice to bring the action in the Western District of Tennessee rather than the District of Utah as this district is much closer to Louisville, Kentucky, and is the only Patent Pilot Program court located in the Sixth Circuit, where Plaintiff is located.

While the Court notes that this is a very close case, the fact that the balance favors Plaintiff, even if only slightly, is sufficient to keep this case in the Western District of Tennessee. See Reese, 574 F.3d at 320, see also Stewart, 2010 WL 4537039, at *2. Accordingly, transfer pursuant to 28 U.S.C. § 1404(a) is not warranted in this case.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Transfer Venue is DENIED. The Court's stay, issued on February 13, 2013 (ECF No. 25), is hereby lifted. The Court will set a patent scheduling conference.

**SO ORDERED** this 18th day of March, 2013.


s/ Jon P. McCalla
JON P. McCALLA
CHIEF U.S. DISTRICT JUDGE


22